14    73
115   489

## WILLIAM M. STORY *v.* G. F. JONES et al.

A judgment by default is properly rendered against the defendant in an attachment suit, where the curator *ad hoc*, after exceptions filed by him have been overruled, fails to file an answer.

The fact that no answer was filed by the curator *ad hoc* will not vitiate the subsequent proceedings, and the final judgment rendered on such default cannot be annulled upon the same allegations that were passed upon by the exceptions filed by the curator *ad hoc*, when more than two years had elapsed from the rendition of the judgment.

When it appears that there was sufficient time for the curator *ad hoc* to have corresponded with the absentee, if he was able to ascertain his post-office, it will be presumed that he did his duty in this respect.

APPEAL from the District Court of the Parish of Madison, *Farrar*, J. *Harrison & Sawyer*, for plaintiff and appellant.

SPOFFORD, J.* The object of this suit is to annul a judgment rendered in the attachment case of *Jones* v. *Story*, in the District Court of Madison, and thus to set aside a Sheriff's sale of the property attached.

The judgment sought to be overruled was rendered on the 1st of May, 1852, for the sum demanded, to wit, $168, with five per cent. interest from the 9th of May, 1851, and costs.

No appeal could lie from it, because the sum, if disputed, was so small.

It might be questioned whether this court has jurisdiction of a suit to annul a judgment from which no appeal could lie.

But if the original judgment can be examined by us as being the basis of the Sheriff's sale, which also is sought to be annulled, then we think it clear that there was no absolute nullity in the proceedings which resulted in the judgment.

The defendant was an absentee; he had land in the parish of Madison; he was brought into court by an attachment of the land, which was put under the control of a keeper, and also by a constructive citation, that is, by affixing copies of the citation and writs of attachment to the court-house door, and by the appointment of an attorney of the court as curator *ad hoc*, who accepted the appointment and acted under it, as appears of record. A valid judgment, binding at least *in rem*, that is upon the property attached, was the result of these proceedings.

In this suit, the defendant in the attachment case seeks to set aside the judgment therein rendered, upon two allegations which were passed upon when raised by exceptions filed by the curator *ad hoc;* these exceptions, even if true, having been overruled, are now insufficient to strike the whole proceedings with nullity, i. e., that the person who made the affidavit as agent was really not the agent, and that the plaintiff was not absent at the time his pretended agent acted for him.

The only other objections urged against the former judgment are that the curator *ad hoc* did not correspond with the absent party, and that there was no answer filed.

Upon the subject of a correspondence between the curator and the absentee, there is no evidence ; it is presumed that the curator did his duty in this respect,

---

*This decision was pronounced by Judge Spofford while on the bench, and was suspended on application for re-hearing.

STORY
v.
JONES.

if he was able to ascertain the post-office of the party whom he was appointed to represent. The case was delayed sufficiently long for that purpose ; besides, the plaintiff does not suggest that he lost any means of defence, or that he had any to communicate to the attorney *ad hoc.*

The fact that the curator *ad hoc,* after his exceptions were overruled, filed no answer, does not vitiate the proceedings ; · he probably thought it wise to file none, as the suit was upon a promissory note, and no defence is even now suggested by the maker as possible to have been pleaded against it. If the curator did not wish to admit the signature, he was not bound to invent a fictitious defence.

The Code of Practice required him not to " file an answer," but to " defend the suit ;" a suit may sometimes be better defended by not filing an answer than by making a false one.

The absentee, if he was aggrieved by the judgment, had a remedy which is now barred by lapse of time ; and the judgment complained of cannot be opened or annulled on any such grounds as were set up in this petition filed more than two years after its rendition.

" The absent debtor, against whom judgment has been so rendered, (i. e. " where attachment is demanded after answer filed, *or if the defendant has failed to answer,*" C. P. 265,) " may, *within two years after such judgment,* obtain the reversal of the same, if he prove that the distance at which he lived from the place where the attachment was obtained, has prevented his being apprised of the proceedings had against him, and that the plaintiff has availed himself of his absence to obtain payment of a debt, either already paid in totality, or partly discharged, or which did not exist." C. P. 267.

Under the head of " rescission of judgments," the Code of Practice also provides, that " a judgment may be reversed, if it has been rendered on an attachment obtained against a person absent, and who had no knowledge of the action having been brought against him ; if such person show that he was not indebted either for the whole, or for part of the same, for which the judgment was obtained and his property sold. But this action shall be prescribed after two years have elapsed from the date of the judgment." C. P. 614.

No radical nullity in the Sheriff's sale which followed the judgment has been alleged or proved.

Judgment affirmed.

MERRICK, C. J., concurring. The decree in this case produces a great hardship upon the plaintiff. It is with reluctance that I yield my assent, and only do so because compelled, as I conceive by the clear provisions of the law.

I think the decree in the proceedings in monition was a final bar to all further claims on the part of the plaintiff.

BUCHANAN, J., dissenting. The defendant *Jones,* a resident of Tennessee, being the holder of a note of the plaintiff, a resident of California, for the sum of one hundred and sixty-eight dollars, brought suit by attachment in the District Court of Madison parish, Louisiana, and attached the interest of plaintiff, being an undivided half, in twenty-five distinct lots and parcels of land, owned by plaintiff jointly with his brother, *Thomas M. Story,* and containing, in the aggregate, nineteen hundred and fifty acres ; all the said tracts being described in the return of the attachment, by section, township and range. A curator *ad hoc* was appointed by the court to represent the plaintiff, defendant in said attachment. The attorney thus appointed not filing an answer, a judgment by default was

rendered, which was made final on the 1st of May, 1852, for the said sum of one hundred and sixty-eight dollars, interest and costs ; " and that the land attached be sold in due course of law." Upon this judgment a writ in the nature of a *renditioni exponas* was issued, commanding the Sheriff to sell, not the undivided half interest of *William M. Story* in the land as attached, but *the whole of the twenty-five lots and parcels of land,* by their description of section, &c.

The land thus seized, was appraised by appraisers appointed by the Sheriff, at five dollars per acre cash, and was adjudicated, in block, at the second crying, to *James J. Amonett* and *Isaac Owen,* for two hundred and fifteen dollars and ninety-three cents, being the exact amount of judgment and costs, at twelve month's credit. This Sheriff's sale was made in October, 1852. In March, 1853, *Amonett* and *Owen* sued out a monition under the Act of 1834, which was homologated on the 21st of April, 1853 ; and on the 16th of May, 1853, *Amonett* conveyed to *Owen* his interest in the land so purchased by them jointly at Sheriff's sale, in the form of a quit claim, for the sum of eleven hundred and ten dollars, " *without any warranty or recourse whatever against him, the said Amonett ; the said Owen being acquainted with the nature and title of the said described lands declares that he accepts this transfer at his own risk and responsibility.*"

It should be observed that *James J. Amonett* and *Isaac Owen* signed *Jones'* petition, as his attorney-at-law, and *Isaac Owen* made the affidavit for the attachment, as the attorney in fact of *Jones.* Neither *Amonett* and *Owen* jointly, nor *Owen* individually, appear to have taken actual possession of the land, which is proved to have been occupied and cultivated by one *James W. Wiley,* from 1850 to 1855, that is to say, the cleared portion of the land, being some two or three hundred acres.

Plaintiff brings this action to have the judgment of *Jones* against him, and the sales by the Sheriff to *Amonett* and *Owen,* and by *Amonett* to *Owen,* declared null ; and for general relief in the premises.

The defendant *Jones* pleads prescription ; and the defendant *Owen* pleads the judgment upon his monition.

This suit was instituted the 1st of December, 1854, two years and seven months after the rendition of the judgment in favor of *Jones* against *Story.* But Art. 612 of the Code of Practice says, that the action of nullity of a judgment rendered against a party who has not been cited, has no limitation, unless the party was present in the parish, and yet suffered the judgment to be executed, without opposing the same.

And as to the plea of monition, the 8th section of the Monition Act of 1834, (Bullard & Curry, page 586,) says, that the Act shall not be taken to render valid any sale made in virtue of a judgment, when the party cast was not duly cited to make defence.

*William M. Story* was not cited in the suit of *Jones* v. *Story.* An attachment of his property was obtained upon the oath of the attorney in fact of the plaintiff in that suit, and one of the defendants in this, *Isaac Owen,* that he resided out of the State of Louisiana, (as he did in fact,) the citation was returned served, by posting a certified copy of the same on the court-house door in the town of Richmond, La. *William M. Story* was, therefore, only in court by his property, and this case is, consequently, within the letter of the exception expressed in the 612th Art. of the Code of Practice, and in the 8th section of the monition law.

There is also, as I conceive, a radical nullity in the so called judgment in the case of *Jones* v. *Story,* which is of such a nature that it would not require to

be urged in a direct action to annul the judgment, but might be successfully urged as matter of objection to it, if offered as evidence of a right or title in the party who obtained that judgment.

As already mentioned, no answer was filed in the suit of *Jones* v. *Story* by the curator *ad hoc* appointed to represent the absent defendant. A default was entered up, in the following words : " The defendant having failed to appear either in person or by advocate, after the delays prescribed by law, judgment by default is rendered against him." And the final judgment confirming the default, reads as follows : " By reason of the law and the evidence being in favor of the plaintiff and against the defendant, and the further reason of the default not being set aside, it is, therefore, ordered," &c. The record shows that the curator *ad hoc* had filed and argued a motion to dissolve the attachment, on formal grounds ; which motion being overruled, he made no further appearance in the cause. He did not resign his appointment ; neither did he carry it out by pleading to the action. Was a judgment by default admissible under the circumstances ?

This point, upon which the plaintiff's case seems to me to turn, is one of great importance, upon which I have 'found no precedent ; which is now presented to us directly for decision, and which comes recommended to our careful consideration by the extraordinary equities of plaintiff's case.

In approaching it, my attention is first arrested by the peculiarity of the practice which is established by law in Louisiana, in the matter of bringing absentees into court. In every other State, as far as my information extends, the absentee who is sued, is notified by advertisements inserted in the newspapers. In Louisiana alone the court appoints counsel to represent the absentee in the suit under the name of curator *ad hoc*, or *ad litem*. The object of the appointment of a curator *ad hoc* to an absent defendant in an attachment suit is, in the words of Article 260 of the Code of Practice, *to represent him and to defend the suit*. The court said, in *Brown* v. *Ferguson*, 4 La. 259, that the appointment of a curator *ad hoc* to an absent defendant, supplies the place of citation. But the object of this legal fiction fails, if the silence of the curator *ad hoc* is to be construed as a defence. The defendant personally cited, may, if he so choose, say nothing ; not so the curator *ad hoc*. *He* is the officer of the court and of the law, and *must* defend the action. In the cases of *Stockton* v. *Hasluck*, 10 Mart. 474 ; *Edmonson* v. *Alabama Railroad*, 13 La. 283 ; *Collins* v. *Pease*, 17 La. 117 ; *Krœutler* v. *Bank United States*, 12 Rob. 461 ; and *Clacor* v. *Lane*, 5 An. 499—it was held that a curator *ad hoc* to an absent defendant, had no right to waive any defence, even of form.

This case seems even stronger than those quoted ; for here the case was proved up *ex parte*, upon a constructive waiver of all defence, in the same manner as if citation had been personally served on defendant. I cannot find any warrant in law for this proceeding, which appears to us, on the contrary, totally inconsistent with the reason and theory of our peculiar practice in such cases.

The silence of the curator *ad hoc* could not constitute the tacit joinder of issue spoken of in Article 360 of the Code of Practice; for the reason given by the legislator in that Article, does not and cannot apply to this case. That Article reads as follows :

" When the defendant suffers judgment by default to be taken against him, the issue is joined tacitly ; *because said defendant is presumed, by his silence, to have confessed the justice of his adversary's demand ; therefore*, the defendant is allowed to proceed with his process, in order to have the judgment confirmed."

Now, it is a principle sanctioned by many decisions, that every law empowering courts to decide upon the rights of absentees, must be strictly construed, and the formalities prescribed exactly followed. Hennen's Digest, verbo Absentee, No. 1.

In numerous cases collected in the same title of Hennen's Digest, No. 23, it is held, that a curator *ad hoc* cannot consent to any judgment being rendered against the party whom he has been appointed to represent. It seems scarcely necessary to assert, that he cannot do indirectly that which he is not allowed to do directly. Yet such would be the effect of construing his silence into a proper foundation for a judgment by default.

I, therefore, regard the judgment by default in question, as an absolute nullity, conferring no right upon the defendants herein, and not cured by the judgment of monition.

In answer to the objection that the suit of *Jones* v. *Story* involved an amount less than three hundred dollars, and, therefore, could not have been the subject of an appeal to this court, I would observe, that the principal object of the present action, is to annul a Sheriff's sale of lands proved to be worth more than ten thousand dollars ; and that nullities apparent in the judgment under which that Sheriff's sale was made, and properly examinable, for the purpose of passing upon the validity of the sale—at least, as between the parties to this record, who were all parties or privies to the said judgment.

I am of opinion that the judgment appealed from ought to be reversed, and that the Sheriff's sale should be annulled.

Re-hearing refused.